UNION COUNTY COMMON PLEAS COURT.

ELMER R. DANIELS AND NAOMI DANIELS, BY ELMER R. DANIELS, HER NEXT FRIEND, PLAINTIFFS, v. RAHWAY HOSPITAL AND JOHN T. KANANE, ADMINISTRATOR OF THE ESTATE OF HERBERT REILLY, DECEASED.

THOMPSON, J.   This is a motion to strike from the answer of the defendants the sixth defense therein set forth, namely, that the defendant Rahway Hospital, being a charitable corporation, there can be no recovery against it for the negligence of its servant, and by reason thereof none against the servant. The question is whether or not a charitable hospital is liable in damages for injuries received by a person on a public highway through the negligent operation of the hospital's ambulance by its employe driver.

The precise point has never been squarely decided by any reported case in this state.   In the case of *D'Amato et al.* v. *Orange Memorial Hospital,* 101 *N. J. L.* 61; 127 *Atl. Rep.* 340, the Court of Errors and Appeals decided that because the defendant in that case was a charitable institution it could not be held liable for the negligence of its servants and agents to a plaintiff, who was a patient.   The court there said (at *p.* 65):

"In our opinion, public policy requires that a charitable institution maintaining a hospital be held not liable for injuries resulting to patients through the negligence or carelessness of its physicians and nurses, even if the injured person were a pay patient—payment on board, medical services

and nursing in such case going to the general fund to maintain the charity."

In the case of *Isabella Boeckel et al.* v. *The Orange Memorial Hospital*, recently decided by the New Jersey Supreme Court, reported in 10 *N. J. Adv. R.* 135; 158 *Atl. Rep.* 832, it was held, in an opinion by Mr. Justice Case, that the exemption from liability, enunciated in the D'Amato case, extends to the case of a visitor to a patient in the hospital. There a mother, visiting her daughter who was a patient at the hospital, fell on the stairs while leaving the building. The court said:

"To the extent that her need went—that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence—she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. * * * The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity. In a very real sense the charitable impulses which served the patient also served the patient's mother, indeed served all those who, by whatever bond of attachment, suffered through the infirmity of the patient or were eased by the lightening of her pain."

In the instant case we have that of a plaintiff who was not a patient of the hospital defendant, nor a visitor to a patient, but a complete stranger, driving his automobile in the public highway and with whom the driver of defendant's ambulance collided. As before stated, this situation appears not to have been dealt with directly in any of the reported decisions of the courts of New Jersey, so that the question now presented is whether the exemption to a charitable hospital from liability for negligence extends beyond the cases of a patient and a visitor to a patient and runs still further to a case of a complete stranger having no beneficial relation to the charitable defendant at the time of the injury.

Let us see what if anything is to be gleaned from the two New Jersey decisions hereinbefore quoted, or what logical deductions it would appear may be reasonably made there-

from, concerning the position of our higher courts on the subject of the liability to a stranger for negligence.

First. In the D'Amato case it will be noted that the exemption was confined strictly to a case of a patient. The decision quotes as "perhaps the leading case supporting this view," that of *Schloendorff* v. *The Society of New York Hospital*, 211 *N. Y.* 125. But this case, while approving exemption in the case of a patient, says it is a settled rule that a hospital is liable to strangers—to persons other than patients —for the torts of its employes committed within the line of their employment. This decision is also quoted in Mr. Justice Case's opinion in the Boeckel case in the New Jersey Supreme Court, though I grant he also refers to the Massachusetts rule to the contrary. As I read the D'Amato and Boeckel decisions, however, I get the impression that the New Jersey courts, while not in terms adopting the New York rule as to strangers, not having had occasion to decide the point, nevertheless lean to the New York case as a forceful expression on the subject.

Second. In the Boeckel case the court stresses the relationship of the plaintiff (a mother visiting her daughter patient) to the defendant hospital as that of a beneficiary receiving the same general class of advantage as the patient herself, bringing the visitor also within the class of direct recipients of the charity's beneficence, an acceptor of its benefactions, and thus equally as subject to the risks of negligence as a patient would be under the law, grounded on public policy. I think the painstaking clarity with which the court disassociated the plaintiff in the Boeckel case from the status of a complete stranger to the hospital's charity leaves the inescapable inference that had she been such a stranger her rights might have been different. It is quite within reason to declare that public policy forbids a charitable institution being held constantly to the danger of damages for untoward results in some of the continuous ministrations to the direct beneficiaries of its charitable contributions, but such a rule is not invoked with equal justice, nor indeed by virtue of

any public requirement, in the case of tortious injuries to those outside of its benefits, neither seeking nor receiving the same. I think the Massachusetts rule of exemption from liability in all cases, whether direct beneficiary of or stranger to the charity, will not be adopted by our New Jersey courts. It may be sound public policy to avoid a diversion of trust funds from the direct object of their charitable donor by forbidding their application to damages for the negligence of the charity's servants where the injured party participates in the charity's largessee, but no one, no mattter how elevated his motive, or how humane his purpose, should be permitted to set up and operate machinery of his charitable organization with impunity to injure by negligence those unconcerned in and unrelated to that which the donor brought into being or supports in operation.

In conformity with these views the motion to strike the sixth defense in the answer will be granted.